755 So.2d 2 (1999)
James Earl WILSON, Appellant,
v.
STATE of Mississippi, Appellee.
No. 98-KA-00403-COA.
Court of Appeals of Mississippi.
April 20, 1999.
Rehearing Denied August 3, 1999.
*3 Jack R. Jones, III, Southaven, Anthony L. Farese, Ashland, Attorneys for Appellant.
Office of the Attorney General by Jean Smith Vaughan, Attorney for Appellee.
BEFORE McMILLIN, C.J., DIAZ, AND KING, JJ.
DIAZ, J., for the Court:
¶ 1. James Earl Wilson was found guilty of armed robbery by a jury of the Circuit Court of DeSoto County. On March 11, 1998, the circuit court entered an order sentencing Wilson to serve thirty years in the custody of the MDOC, with fifteen years suspended contingent upon future good behavior. He now appeals to this Court, asserting that the circuit court erred in not granting his ore tenus motions, made the morning of his trial, for a mental examination and for a continuance. Finding that Wilson provided no background evidence demonstrating the need for a mental examination and that he failed to meet his burden of demonstrating that the circuit court abused its discretion in not granting his motion for a continuance, we affirm his conviction and sentence.

FACTS
¶ 2. Olive Branch Police Officer Bobby Jones responded to a 911 call from the Texaco Gas Mart # 24 around 11:17 p.m. on May 13, 1997. Wilson had entered the store sometime earlier, purchased a soft drink, and waited until Eddie Faulkner arrived to relieve the counter clerk, Sharon Davis, whose shift ended at 11:00 p.m. Wilson and Faulkner went outside for a few minutes. Wilson returned alone, put a gun in Davis' side and asked for the keys to her car, a white 1995 Ford Contour. She turned over the keys, whereupon Wilson demanded the money in the cash register. Davis pressed the store's "panic *4 button," alerting police that a robbery was in progress, and made a separate 911 call.
¶ 3. Police also received a 911 call from Brett Harris, who had been confronted by a man fitting Wilson's description in the convenience store parking lot. Harris told authorities that the man stuck a gun in his chest and ordered him to get back into his car. Harris turned around and ran away.
¶ 4. Officer Jason Savage, a patrolman with the Byhalia Police Department, encountered the stolen Contour. He pursued the vehicle until Wilson crashed into a tree. Savage recovered the bandana and black "Raider's" jacket identified by Davis and Harris, $198 in cash and a .22 caliber snub-nose revolver.
¶ 5. Wilson was taken to the hospital by ambulance. Officer Jones, who rode to the hospital with Wilson indicated that he was "in and out of it," but alert and needed to be restrained. He stated that Wilson said that his shoulder blade hurt. He found out later that Wilson had sustained a head injury. Cleatus Oliver, Chief of Detectives with the City of Olive Branch, testified that while he was waiting to talk with Wilson at the hospital, one of the ambulance personnel told him that Wilson had a broken jaw.

DISCUSSION

I. WHETHER THE CIRCUIT COURT ABUSED ITS DISCRETION IN REFUSING TO ORDER A METAL EXAMINATION WHEN THE APPELLANT WAS INCAPABLE OF MAKING A RATIONAL DEFENSE ON HIS OWN BEHALF.
¶ 6. On the day of the trial, Wilson made an ore tenus motion for a mental examination to determine whether he knew right from wrong at the time of the robbery and whether he could adequately assist counsel in his defense. His trial attorney stated that he had absolutely no recollection of the events that transpired that evening. On appeal, Wilson asserts that he suffers from a memory loss as the result of a closed-head injury sustained in the accident at end of his flight from authorities.
¶ 7. Pursuant to Rule 9.06 of the Uniform Circuit and County Court Rules and Miss.Code Ann. § 99-13-11(Supp.1998), the circuit court may order a defendant to undergo a mental examination to determine whether he is mentally capable of standing trial and assisting in his defense. See Frierson v. State, 250 Miss. 339, 165 So.2d 342, 344 (1964). The burden is on the defendant to persuade the trial judge that there is sufficient evidence to warrant a mental examination. "[W]hen the trial court has made a finding that the evidence does not show a probability that the defendant is incapable of making a rational defense, the Court will not overturn that finding unless the finding was manifestly against the overwhelming weight of the evidence." Dunn v. State, 693 So.2d 1333, 1341 (Miss.1997); Laney v. State, 486 So.2d 1242, 1244-45 (Miss.1986).
¶ 8. There is no evidence in the record to suggest that Wilson was incapable of standing trial or assisting his attorney in his defense. Wilson argues on appeal that he sustained a closed-head injury which effectively erased his memory of the events leading to his arrest. He provides no evidence of his injury or memory loss, nor was the matter even raised when the motion was presented. We "`will not consider matters which do not appear in the record and must confine [ourselves] to what actually does appear in the record.'" Medina v. State, 688 So.2d 727, 732 (Miss.1996)(quoting Robinson v. State, 662 So.2d 1100, 1104 (Miss.1995)). "Moreover, we cannot decide an issue based on assertions in the briefs alone; rather, issues must be proven by the record." Medina, 688 So.2d at 732 (citations omitted). Wilson's father testified only that Wilson had been sent to a number of drug rehabilitation centers and that "he loses his mind" and his memory when he uses crack cocaine. His mother, likewise, did not think *5 he had been treated for any problem other than drug abuse. Further, reference was made to medical records which indicated that there were drugs in his system when he was taken to the hospital after the accident.
¶ 9. Based on the evidence presented, the circuit court found that Wilson's substance abuse problem did not warrant ordering him to undergo a mental examination. Wilson ably assisted his court-appointed attorney throughout trial. The circuit court made several on the record observations of the competence with which he examined witnesses and otherwise conducted himself. Based on Wilson's failure to demonstrate any basis for a mental examination or an inability to assist in his defense, the circuit court's decision was not against the overwhelming weight of the evidence.

II. WHETHER THE CIRCUIT COURT ERRED IN DENYING WILSON A CONTINUANCE TO SUBSTITUTE PAID COUNSEL FOR THE COURT-APPOINTED ATTORNEY TO REPRESENT HIM AT TRIAL.
¶ 10. After Wilson's motion for a mental examination was denied, he made a second ore tenus motion, seeking a continuance in order to obtain paid counsel. Wilson's wife stated that they had contacted Tony Farese, who, although he could not be in court that day, had told them that if they could get a continuance and $5,000, "`I will be glad to try and see what I can work out from there.'" She told the court that she had received a tax refund and her father-in-law "was coming into some money" the next day, enabling them to retain paid counsel. The circuit court denied the motion, finding that Wilson, who had been incarcerated since November, had had ample opportunity to do something about getting a different attorney.
¶ 11. Whether "to grant or deny a motion for continuance is within the sound discretion of the trial court and will not be grounds for reversal unless shown to have resulted in manifest injustice." Coleman v. State, 697 So.2d 777, 780 (Miss. 1997). The defendant has the burden of showing that the trial court abused its discretion in denying his motion for a continuance. Morris v. State, 595 So.2d 840, 844 (Miss.1991). "The right to a continuance cannot be established by conclusory arguments alone. The need for additional time is a matter that is the subject of proof." Atterberry v. State, 667 So.2d 622, 631 (Miss.1995).
¶ 12. "It is incumbent on the defendant seeking such a continuance to show concrete facts that demonstrate the particular prejudice to the defense that will necessarily arise if a delay is not granted." Golden v. State, 97-KA-01134-COA (¶ 2), 736 So.2d 1076 (Miss.Ct.App. 1999). Wilson made absolutely no showing to the trial court that he might be prejudiced in any way if the relief sought was not granted. Only after his motion was denied, and he had made his request to participate in the trial proceedings, did Wilson indicate that he "ain't seen eye to eye" with his attorney, apparently because he refused to take the attorney's advice to accept the State's plea agreement. He further makes no showing to this Court that he was prejudiced or that the circuit court abused its discretion in refusing to grant an eleventh-hour continuance. Accordingly, we cannot say that the circuit court abused its discretion in denying Wilson's motion for a continuance.

CONCLUSIONS
¶ 13. There is no evidence in the record to support Wilson's assertions that the circuit court abused its discretion in denying his ore tenus motions for a mental examination and a continuance. We therefore affirm Wilson's conviction and sentence for armed robbery.
¶ 14. THE JUDGMENT OF THE DESOTO COUNTY CIRCUIT COURT OF CONVICTION OF ARMED ROBBERY WITH A SENTENCE OF THIRTY YEARS IN THE CUSTODY OF THE *6 MISSISSIPPI DEPARTMENT OF CORRECTIONS IS AFFIRMED. COSTS OF THIS APPEAL ARE ASSESSED TO APPELLANT.
McMILLIN, C.J., KING AND SOUTHWICK, P.JJ., BRIDGES, COLEMAN, IRVING, LEE, PAYNE, AND THOMAS, JJ., CONCUR.